## VAN RENSSELAER *vs.* CHADWICK.

The rent reserved in the manor leases which exist in this state, is a rent charge. The *dictum* to the contrary, in *Van Rensselaer* v. *Bradley,* (3 *Denio,* 135,) is not sustained by authority.

Where several persons, being the owners of land chargeable with rent, as tenants in common, make partition between themselves, each assuming the payment of his equitable share of the rent, a release to one of the owners does not extinguish the liability of the other.

Thus, where lands, charged with the payment of the rents reserved in the original leases, descended to the defendant and his brother J. C., from their father, the lessee, and they made partition between themselves, each conveying to the other, and each agreeing to assume and pay his equitable proportion of the rents; *Held* that the land of each was still liable for the rent, but that, as between themselves, each was liable to the other for any amount he was compelled to pay, beyond his proportionate share.

And the lessor having, subsequent to such partition, and apportionment of the rent, executed a release to J. C. of all his estate and interest in the portion of the premises conveyed to J. C. on the partition; it was *further held* that the lessor, by the execution of that release made himself a party to the partition, and became bound by the apportionment that had been made; and that he could no longer claim from the defendant the payment of any greater amount of rent than by the contract for partition between him and J. C. he had agreed to pay.

*Also held* that there was no rule of law which would give to such a transaction the effect of exonerating the defendant, or his land, from the payment of his proportionate share of the rent.

Van Rensselaer *v.* Chadwick.

No case is to be found in which rent, though it be a rent charge, if in its nature
it be divisible and apportionable, has been held to have been extinguished as
to the tenant of one parcel of the land, by a release to another tenant of a dif-
ferent parcel held by him in severalty. *Per* HARRIS, J.

Where a lease reserved to the grantor &c., "yearly and every year, the yearly
rent of twenty-eight skipples of wheat and four fat fowls, *and perform* one
day's service with carriage and horses, the *first* payment to be made on the
1st day of January," &c.; *Held* that the fair construction of the whole sen-
tence required that the words "yearly and every year," and the words "yearly
rent," should be made applicable to the performance of the day's service as
well as the other items of the rent.

THIS action was brought to recover certain rents alleged to
be due from the defendant to the plaintiff. It was tried at
the Albany circuit, in October, 1853, before Mr. Justice PAR-
KER. Upon the trial, the plaintiff gave in evidence a lease in
fee from Stephen Van Rensselaer, his father, to Samuel Combe,
jr., dated February 23, 1797, for lot 74, in the town of Rens-
selaerville, containing 160½ acres, and reserving certain rents.
Also, a similar lease to Andrew Speckerman, for lot 75, in the
same town, dated February 10, 1803, the lot containing 153¼
acres. The reservation of rent in the last mentioned lease was
as follows : "Yielding and paying therefor, yearly and every
year, during the continuance of this grant, unto the said Ste-
phen Van Rensselaer, his heirs or assigns, the yearly rent of
28 skipples of good, clean, merchantable winter wheat, and four
fat fowls, to be delivered at the now mansion house &c., and
perform one day's service with carriage and horses."

It further appeared that Aaron Chadwick, the father of
the defendant, in his lifetime, became the assignee of the
lessee of lot 75, a part of lot 74 and also parts of three other
lots, making together a farm of 315 acres ; that he died in
1838, and his farm descended to the defendant and his brother
John Chadwick, as heirs at law ; that the two brothers made
partition between themselves ; that John Chadwick conveyed
to the defendant 142 acres of lot 75 and 15 acres of lot 74, and
the defendant conveyed to John the residue of the farm. These
deeds bear date the 4th day of March, 1841. In each of the
deeds it is stated, that the grantee is to hold "subject to the

claims of Stephen Van Rensselaer, Esq. proprietor of the soil." The rent had been paid up to the year 1838. The amount due upon that part of lot 76 conveyed to the defendant, from 1838 to 1853, with interest, was $480.48, and on that part of lot 74 conveyed to the defendant, $52.88. These sums included $25 charged for the day's service with carriage and horses.

The defendant also gave in evidence a deed from the plaintiff and his wife to John Chadwick, dated August 19, 1842, whereby for the consideration of $632, the plaintiff, who was admitted to be the devisee of the rents reserved upon the lots in question, released to John Chadwick, his heirs &c., all his estate, right, title, interest &c., in and to the farm conveyed to him by the defendant. The testimony being closed, the counsel for the defendant insisted that the rent in question was a rent charge, and that by releasing 20 acres of lot 75 from the payment of rent, as the plaintiff had done by his deed to John Chadwick, he had extinguished the rent upon the whole lot, and that consequently the plaintiff could not recover for any rent upon that part of lot 75 held by him, since 1842.

The counsel for the defendant also insisted that, inasmuch as it appeared that one day's service with carriage and horses had been paid, the plaintiff was not entitled to recover any thing on account of such services. The court refused so to hold, and decided that the plaintiff was entitled to recover the whole amount claimed as the proportionate share of rent chargeable upon those parts of the lots held by the defendant, amounting to $533.36. Upon this decision judgment was entered, and the defendant appealed to the general term.

*C. M. Jenkins*, for the plaintiff.

*A. J. Colvin*, for the defendant.

*By the Court*, HARRIS, J. There can be no doubt, I think, that the rent reserved in the manor leases which exist in this state, is a rent charge. The *dictum* to the contrary, in *Van Rensselaer* v. *Bradley*, (3 *Denio*, 135,) is not sustained by

authority. In *Coke Litt.* § 217, it is said that "if a man make a feoffment in fee, and by the same indenture reserveth to himself and his heirs a certain rent, with power of distress, such a rent is a rent charge, because such lands and tenements are charged with such distress by *force of the writing* only, and not of common right." The rent reserved upon a grant in fee is in the nature of a new purchase from the grantee. *Bacon's Abr. tit. Rent, H.*)

The doctrine of the common law in relation to the discharge of a rent charge, as it is laid down by Littleton, § 222, is that if a man has a rent charge issuing out of certain lands and he purchases any part of the land, the rent charge is extinct. The reason for this rule, as given by Lord Coke, is, that the rent is entire, and against common right, and issuing out of every part of the land, and therefore by purchase of part it is extinct in the whole. So also, if a person having a rent charge issuing out of three acres of land, releases all his right in one acre, the rent is extinct, because all issues out of every part, and it cannot be apportioned. (18 *Vin. Abr.* 505.)

The common mode, says *Cruise*, when a person entitled to a rent charge is disposed to exonerate a part of the lands from the payment of rent, without risking its entire extinguishment, has been for the grantee of the rent charged to join in the conveyance of the land, which operates as a release of the land conveyed, and to insert a proviso in the deed that the other lands shall continue subject to the rent. (*See* 3 *Cruise*, 318.)

It would still be necessary to adopt some such mode of proceeding where it was sought to exonerate a part of the land charged with the rent, and hold the residue for the payment of the whole. But it has never been supposed that, where tenants in common of lands chargeable with rent, have made partition between themselves, each assuming the payment of his proportionate share of rent, any such precaution was necessary. "If coparceners make partition," says Perkins, "the rent shall be taken by equity, so that in that case, the rent shall be apportioned." (*Perkins on Conveyancing*, § 677.) After such a partition, a discharge of one portion of the land from the rent could only

Van Rensselaer *v.* Chadwick.

operate to the advantage of the other portion. It might happen, without such a discharge, that the land of one coparcener might be charged with the payment of all the rent; but, after such a discharge, it could only be charged with such proportion of the rent as the tenants themselves had agreed upon, as its just share.

In this case, the lands charged with the payment of the rents reserved in the original leases had descended to the defendant and his brother. They had made partition between themselves. Each had conveyed to the other, and each had taken his share subject to the claim of the plaintiff, by which I understand that it was agreed between them that each should assume and pay his equitable proportion of the rents reserved upon the lands of both. The land of either would still be liable for all the rent, but, as between themselves, each would be liable to the other for any amount he should be compelled to pay beyond his proper share. A partition having thus been made, and the rent having been apportioned between the several owners of the land, the plaintiff, by the execution of the release to John Chadwick, made himself a party to the partition and became bound by the apportionment that had been made. He could no longer claim from the defendant the payment of any greater amount of rent than by the contract for partition between him and his brother he had agreed to pay. There can be no rule of law which will give to such a transaction the effect of exonerating the defendant or his land from the payment of the rent claimed.

The question in this case is quite analogous to that decided in *Ingersoll* v. *Sergeant*, (1 *Whart.* 337.) In that case, a lot of ground in the city of Philadelphia had been conveyed in fee, the grantor reserving to himself and his heirs an annual rent of $351. Ingersoll, the plaintiff, had, through sundry intermediate conveyances, become the owner of the lot charged with the rent. On the 30th of April, 1819, Ingersoll conveyed a part of the lot to Jonathan Smith. In the deed there was no condition that Smith, the grantee, should assume or pay any part of the rent. Sergeant, who had become the assignee of the rent, subsequently to the conveyance from Ingersoll to Smith, re-

leased to Smith his part of the lot. After the execution of this release, Sergeant, the owner of the rent, assigned it to Mrs. Sergeant, the defendant, and she distrained upon Ingersoll's part of the lot for the whole rent. Ingersoll brought replevin, and the defendant avowed for rent in arrear. The question thus raised was, whether the release to Smith operated as an extinguishment of the whole rent. The case was twice argued by the most distinguished counsel at the Philadelphia bar, and it was held, after a most elaborate examination by the court, that the release had the effect to extinguish only so much of the rent as should be in proportion to the comparative value of the land bought of the plaintiff by Smith.

It will be perceived, upon a comparison of the facts in the case with those of the case under consideration, that, while in the latter case the several owners of the land charged with the rent had agreed between themselves that each should pay his just share of the rent, in the former Ingersoll had conveyed to Smith, with covenants of warranty, and without any agreement on the part of Smith that his part of the lot should be chargeable with any part of the rent. This element, in the present case, so far as it affects the question at all, is obviously in favor of the position assumed by the plaintiff's counsel. There had been not only a partition of the land between the owners, but they had so far as they were able to do it, severed the rent chargeable upon their land. The plaintiff but ratified their own contract when he assumed to deal with one of them in respect to his share of the rent without regard to the other.

*Farley* v. *Craig*, (6 *Halstead*, 262,) involved a similar question. That was ejectment for the non-payment of rent. One Logan had granted a tract of land containing 382 acres, to Joseph Smith, reserving certain rents : after the death of Smith, the first tenant, 200 acres of the land came to the father of the defendant, who paid rent thereon. After his death, the 200 acres was divided between his two sons, who took their respective shares in severalty, and each paid to the plaintiff, for several years, the half of their father's rent. The action was against one of the sons, for the non-payment of the rent upon

Van Rensselaer v. Chadwick.

his share of the 200 acres. The court was divided in opinion upon the plaintiff's right of re-entry depending on the provisions in the original conveyance, but both the judges who delivered opinions in the case, agreed that the plaintiff showed a right to the rent apportioned upon the defendant's share of the 200 acres. "Rent charges," said Drake, J., "may be apportioned by contract or by descent. They may be divided by assignment or by the act of law. In this case, we find the father of the defendant, forty years ago, paying a special amount of rent for a part of the lands originally subjected to the rent charge, and it was continued for nearly thirty years by the father, mother and the defendant himself. This is abundant evidence of an apportionment by contract. And when the defendant and his brother divided the father farm, equally, in value, and each, for several years thereafter, paid the half of the rent, *it is evidence of the agreement of all the parties thereto, and should not now be disputed.*" (*See also Van Rensselaer* v. *Bradley*, 3 *Denio*, 135; *Nellis* v. *Lathrop*, 22 *Wend.* 121.)

It was well said by the plaintiff's counsel upon the argument, that no case is to be found in which rent, though it be a rent charge, if in its nature it be divisible and apportionable, has been held to have been extinguished as to the tenant of one parcel of the land by a release to another tenant of a different parcel held by him in severalty.

The remaining question in the case is whether the plaintiff is entitled to recover the $25 proved upon the trial as the estimated value of the defendant's share of one day's service with carriage and horses reserved in the leases. It was proved on the trial that the plaintiff had received compensation for one day's service, and the defendant's counsel insisted that the reservation in the lease was thereby satisfied. Whether this is so or not, must be determined by a reference to the reservation itself. By its terms, there is reserved to the grantor, &c. " yearly and every year, the yearly rent of twenty-eight skipples of wheat and four fat fowls, *and perform* one day's service with carriage and horses, the *first* payment to be made on the

first day of January," &c.   I have, in quoting from the instru-
ment, omitted some intermediate language which relates to the
place where the wheat and fowls are to be delivered, and which
is clearly parenthetical.   The rent reserved consists of three
things ; the wheat, the fowls, and the day's service.   In respect
to the latter, the terms of the reservation are inapt and un-
grammatical.   The word " perform" is used as a *verb* without
either *a noun or pronoun* for a nominative.   To give effect to
what seems to have been the intention of the parties to the in-
strument, instead of using the word as a *verb*, it should have
been used in the form of a *participle* or a *noun*.   The reserva-
tion would then read as follows :  " Yielding and paying therefor,
yearly and every year, the yearly rent of twenty-eight skipples
of wheat and four fat fowls, and *performing* one day's service,"
&c. or, " yielding and paying &c., the wheat and fowls and
*the performance* of one day's service" &c.   I think the fair
construction of the whole sentence requires that the words
" yearly and every year," and the words " yearly rent" should
be made applicable to the performance of the day's service as
well as the other items of the rent ; so too, the succeeding pro-
vision that the *first payment* shall be made on the second day
of January, next after the execution of the instrument, seems,
from the whole structure of the sentence, to refer not less to
the performance of the day's service than to the wheat and the
fowls.   This view of the question is strongly supported by the
uniform practical construction that this reservation, found in
so many of the manor leases, has received for more than half a
century.   I am of opinion, therefore, that the judgment at the
circuit should be affirmed.

[ALBANY GENERAL TERM, May 4, 1854.   *Wright, Harris* and *Watson,*
Justices.]